# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| CHAD LARKIN and GENNY LARKIN, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 2:18-cv-02636-TLP-dkv |
| v. ) | |
| ) | JURY DEMAND |
| JONATHAN DAY, a/k/a JJ DA BOSS, ) | |
| PILGRIM FILMS & TELEVISION, L.L.C. ) | |
| d/b/a PILGRIM MEDIA GROUP AND ) | |
| OPERATIONS, and DISCOVERY, INC., ) | |
| ) | |
| Defendants. ) | |

## ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS OR COMPEL ARBITRATION

Defendants move to dismiss the complaint or, in the alternative, to compel arbitration. (ECF Nos. 29 & 34.) Plaintiffs urge this Court to deny the motion to dismiss and to maintain jurisdiction over their claims by arguing that the contract containing the arbitration clause is void. (ECF No. 48.) For the reasons below, the Court GRANTS Defendants' request to compel arbitration as to Chad Larkin's claims. But the Court DENIES the Motion to Dismiss on Genny Larkin's claims.

## BACKGROUND

Plaintiffs Chad and Genny Larkin sued Jonathan Day ("Day"), Pilgrim Films & Television, L.L.C., d/b/a Pilgrim Media Group and Operations ("Pilgrim"), and Discovery, Inc. ("Discovery") for harm suffered during the filming of "Street Outlaws Memphis." (ECF No. 1.) Street Outlaws Memphis is a television show produced by Pilgrim for Discovery. (*Id.* at PageID 3.) The show purports to portray illegal street-racing in and around Memphis,

Tennessee. (*Id.*) Day hosts the show and he, along with the other "Memphis Street Outlaws," invite outside racers to compete in street racing events. (*Id.*) Chad Larkin ("Mr. Larkin") was one of those outside racers who allegedly participated in September 2017. (*Id.* at PageID 4–5.) To increase the show's drama and ratings, Defendants allegedly encouraged the Memphis Street Outlaws and the outside racers to act angry and "talk trash" to one another. (*Id.* at PageID 5–6.)

Unsurprisingly, the theatrics allegedly turned real when Mr. Larkin's taunts got under Day's skin. (*Id.*) Tensions ran high as one of the Memphis Street Outlaws "jumped the start signal"[1] and the outside racer chose not to follow, leading to a victory for the outside racer and a disqualification for the Memphis Street Outlaw. (*Id.* at PageID 6–7.) The Complaint claims that Mr. Larkin began to taunt Day and the Memphis Street Outlaws—as requested by the production staff. (*Id.* at PageID 7.) In response Day and "Bounty Hunter," a member of the Memphis Street Outlaws, allegedly attacked Mr. Larkin. (*Id.* at PageID 9–10.) Mr. Larkin alleges suffered extensive bodily injuries during the attack. (*Id.*) Genny Larkin ("Mrs. Larkin"), alleges that she also suffered physical and emotional injuries when a female member of the Memphis Street Outlaws attacked her when she tried to help her husband. (*Id.* at PageID 10.) This attack undergirds the Complaint.

Defendants counter these allegations by arguing that this Court should enforce the Arbitration Provision in the Appearance Release (the "Release") Mr. Larkin signed when he arrived at the filming location. (*Id.* at PageID 72–73.) By contrast, Plaintiffs argue that the Arbitration Provision is not enforceable because the Release is void. (ECF No. 48 at PageID 153.) In fact, they assert that the Release as a whole (including the Arbitration Provision) is

---

[1] That is, one of the participants started racing before the race officially began.

void because it is an agreement to commit illegal activities. (*Id.*) Plaintiffs assert also that the Arbitration Provision is not severable from the Release and, importantly, that this Court should determine whether the Release is valid rather the arbitrator making that decision. (*Id.*) On the other hand, Defendants argue that, at a minimum, the Arbitration Provision is severable and that the Larkins' claims—including the validity of the Release should be referred to arbitration.

## **LEGAL STANDARD**

The Federal Arbitration Act ("FAA") is the starting point for this Motion. Congress enacted the FAA "to overcome judicial resistance to arbitration." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 400, 443 (2006). The FAA provides a way for one to petition a court to compel arbitration under a contract. *See* 9 U.S.C. § 4. Before compelling arbitration, the court first determines whether the parties agreed to arbitrate. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). Next, the court decides the scope of that agreement. *Id*. Finally, the court must decide whether to stay the remainder of the case if not all the claims are referred to arbitration. *Id*.

> Section 2 of the FAA reflects the Act's breadth. This section states:
>
> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The Supreme Court has interpreted this provision as "reflecting both a liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotations and citations omitted). So courts place arbitration agreements on "equal footing with other contracts." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). This "ensures

that private arbitration agreements are enforced according to their terms." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 469 (1989). And the FAA is a body of federal substantive law that preempts state laws. *Southland Corp. v. Keating*, 465 U.S. 1, 12–13 (1984).

Despite the FAA's broad reach, a savings clause in § 2 "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 563 U.S. at 339 (quoting *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). Parties challenging an arbitration provision under this savings clause may do so in two ways.

First, one can challenge the validity of the arbitration clause itself. *Cardegna*, 546 U.S. at 444. A challenge singling out the arbitration clause itself, such as fraud in the inducement to arbitrate, raises "an issue which goes to the 'making' of the agreement to arbitrate,'" which falls within the courts authority to decide. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967). In effect, these disputes concern the applicability of the FAA to the parties' contract. *See id*. at 404.

The second challenge is to the enforceability or validity of the contract as a whole. *Id*. That said, arbitrators, not the courts, decide challenges to the contract's validity or enforceability apart from challenges to the formation of the contract. *See Cardegna*, 546 U.S. at 445–46; *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 393 (6th Cir. 2003); *Day v. Fortune Hi-Tech Marketing, Inc.*, 536 F. App'x 600, 604 (6th Cir. 2013). This is because, "as a matter of substantive federal law, an arbitration provision is severable from the remainder of the contract." *Cardegna*. at 445–46. So a defective contract may still contain an enforceable

4

arbitration prevision. If so, the FAA grants to the arbitrator—not the court—the authority to hear challenges to the contract. *Cardegna*, at 445–46.

When a court determines that the claims are covered by a valid arbitration agreement, that court is to stay the proceedings until arbitration is complete. *Fazio*, 340 F.3d at 392 (citing 9 U.S.C. § 3).

## ANALYSIS

Defendants now move to dismiss or, in the alternative, to compel arbitration. (ECF Nos. 29 & 34.) Plaintiffs argue that the arbitration agreement in the Release is not severable because the Release is void for illegality. (ECF No. 48 at PageID 153.) This Court must categorize Plaintiffs' challenge to the arbitration provision to determine whether the Court can address the issues raised.

### I.     Chad Larkin's Claims

#### A.     Mr. Larkin entered into a valid agreement to arbitrate.

Plaintiff challenges the enforceability of the contract as a whole. But he does not claim that Defendants fraudulently induced him into agreeing to the arbitration provision, nor does he argue that there is an issue with the formation of the Release. Under the FAA, Courts may not address issues related to the contract as a whole and not the arbitration clause specifically unless it is a question of formation. *See Cardegna*, 546 U.S. at 445–46; *Fazio*, 340 F.3d at 393; *Day*, 536 F. App'x at 604. Put differently, valid arbitration clauses are severable and enforceable even if the rest of the contract is void.

Plaintiffs argue that the arbitration agreement in the Release is not severable because the subject matter of the contract is illegal street-racing and gambling. (ECF No. 48 at PageID 153.) Plaintiffs cite the Sixth Circuit case, *Day v. Fortune Hi-Tech Marketing, Inc.*,

5

536 F. App'x 600 (6th Cir. 2013), to advance the argument that the arbitration agreement is not severable from the contract. (*Id.* at 160.)

The court in *Day* held that an arbitration agreement was not valid because the contract lacked adequate consideration. 536 F. App'x at 604 (explaining that the contract lacked adequate consideration because Defendant's promises were illusory because the defendant "retained the ability to modify any term of the contract"). The contract in *Day* was defective in its formation. *Id.* As a result, the contract's provisions—including the arbitration provision—were also invalid. *Id.*

But this case is different. Whether a contract was formed at all and whether a validly formed contract is otherwise enforceable are two separate questions. *See Cardegna*, 546 U.S. at 445 n.1 ("The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded."). Unlike the argument in *Day*, Plaintiffs here assert that the subject matter of the Release is illegal activity rendering the entire agreement (including the arbitration clause) unenforceable. In effect, Plaintiffs "challenge[s] the substance, rather than the existence," of the Release. *See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Kean-Argovitz Resorts*, 383 F.3d 512, 516 (6th Cir. 2004) (alteration in original) (quoting *Burden v. Check Into Cash of Ky., L.L.C.*, 267 F.3d 483, 490 (6th Cir. 2001)). Although the provisions within a contract are not enforceable if a contract does not exist (*See Day*, 536 F. App'x at 604), a contract can be validly formed and yet still be void for illegality. *See generally Cardegna*, 546 U.S. 440; *Rent-A-Center*, 561 U.S. 63; *Prima Paint Corp.*, 388 U.S. 395.

At any rate, unlike the argument in *Day*, Plaintiffs argument here does not attack the formation or existence of the Release or the Arbitration Agreement. So we look to the

6

Supreme Court holdings in *Prima Paint Corp.* and *Cardeg*na which make clear that challenging a contract as void for illegality purposes is a question for the arbitrator and not the court to determine. *See Cardegna*, 546 U.S. at 444–46; *Prima Paint Corp.*, 388 U.S. at 402–04. As a result, this Court may not address Plaintiffs' argument that the Release itself is unenforceable.

The fact the contract as a whole may be void because of illegality does not necessarily mean "the Arbitration Provision somehow goes down with the ship." *Doe #1 v. Déjà Vu Consulting Inc.*, No. 3-17-cv-00040, 2017 WL 3837730, at *14 (M.D. Tenn. Sept. 9, 2017) (internal quotations omitted). The Court thus finds that a valid arbitration agreement exists and that it is severable from the rest of the contract.

  **B.** **Mr. Larkin's claims are covered by the scope of the arbitration agreement.**

The Court next determines the scope of the arbitration agreement. *Stout*, 228 F.3d at 714. When a court is "faced with a broad arbitration clause, such as one covering *any* dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration." *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005) (emphasis in original). As for broad arbitration agreements, "only an express provision excluding a specific dispute, or 'the most forceful evidence of a purpose to exclude the claim from arbitration,' will remove the dispute from consideration by the arbitrators." *Highlands Wellmont Health Network, Inc.* v. *John Deere Health Plan, Inc.*, 350 F.3d 568, 577 (6th Cir. 2003) (quoting *AT&T Techs., Inc.* v. *Communications Workers of Am.*, 475 U.S. 643, 650 (1986)).

The arbitration agreement here states:

> Any controversy or claim relating to this Release ("Claim") shall be governed by and construed in accordance with the substantive laws of the State of California . . . . All Claims shall be submitted to final and binding arbitration . . . before a single arbitrator in accordance with California Code of Civil Procedure §§ 1280 et seq.

(ECF No. 32-1 at PageID 87.) The Release applies to all parties, including the Producer and Network and the agents and employees of these entities. (*Id*.) So the scope of the arbitration agreement encompasses all the claims brought by Mr. Larkin against Day, Pilgrim, and Discovery.

The Court thus GRANTS Defendants' Motion to Compel Arbitration as to Mr. Larkin's claims and DENIES AS MOOT the Motion to Dismiss. In accordance with § 4 of the FAA, this Court will stay all of Mr. Larkin's claims pending the results of arbitration.

Now the Court should address Genny Larkin's claims.

## II. Genny Larkin's Claims Against Pilgrim and Discovery

Mrs. Larkin claims a member of the Memphis Street Outlaws assaulted her when she tried to help her husband during the alleged attack. (ECF No. 1 at PageID 10.) She claims she suffered physical and emotional injuries as a result. (*Id*.) Mrs. Larkin argues that Day is personally liable and Pilgrim and Discovery are vicariously liable for her alleged damages. (*Id.* at PageID 11–12.)

Nothing in the record suggests that Mrs. Larkin signed a "Release Appearance" or a "Race Related Release and Waiver of Liability Agreement." So the claims by Mrs. Larkin are not subject to arbitration. And Defendants assert no basis for the Court to dismiss her claims. The Court, therefore, DENIES Defendants' Motion to Dismiss or in the Alternative to Compel Arbitration Mrs. Larkin's claims because her claims are not subject to arbitration and Defendant's assert no basis for dismissal.

8

## CONCLUSION

The Court GRANTS Defendants' Motion to Compel Arbitration as to Chad Larkin's claims against all Defendants. Chad Larkin's claims are therefore REFERRED to arbitration. And the Court DENIES the Motion to Dismiss or in the Alternative to Compel Arbitration as to Genny Larkin's claims. The Court STAYS Chad Larkin's claims pending arbitration. Genny Larkin's claims will proceed.

**SO ORDERED**, this 15th day of May, 2019.

                                                 s/Thomas L. Parker
                                                 THOMAS L. PARKER
                                                 UNITED STATES DISTRICT JUDGE